**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edward Lee TIMBERLAKE,**
**Defendant-Appellant.**

No. 76–2478.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1977.

---

J. Hue Henry, Athens, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Robert H. McKnight, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, SIMPSON and TJOF-LAT, Circuit Judges.

SIMPSON, Circuit Judge:

Edward Lee Timberlake was charged in a four count indictment with three counts (Counts II, III, and IV) of distribution of cocaine, a Schedule II controlled substance, in violation of Title 21, U.S.Code § 841(a)(1), and one count (Count I) of

conspiracy to possess with intent to distribute cocaine, in violation of Title 21, U.S. Code § 846. The conspiracy count charged one overt act, a sale of cocaine, committed by appellant Timberlake, in furtherance of the conspiracy.[1] After a jury trial, Timberlake was found guilty on all counts. He was sentenced to five years confinement under Count I (the conspiracy charge), three years confinement under Count II to run consecutively to the sentence on Count I, and three years confinement under the remaining two counts to be served concurrently with the aggregate eight years under Counts I and II. The trial court directed that Timberlake serve a three year mandatory parole term following his custodial sentences.

■ Three issues are raised on appeal. We reverse and remand for the failure of the trial court to instruct the jury as to entrapment, and hence do not reach the other two issues raised.[2]

## I. UNDERLYING FACTS

On December 20, 1974, one Bob Barnes was charged in a Magistrate's complaint filed by the Drug Enforcement Administration (DEA) in Miami, Florida, with aiding and abetting the importation of cocaine. The government agreed not to prosecute Barnes in exchange for his cooperation in providing assistance and information to the DEA concerning illegal drug trafficking in Atlanta. Barnes also agreed to provide information on a drug manufacturing and distribution ring in Colombia, South America. The complaint against Barnes was dismissed in May 1975.

In December 1974, Barnes informed DEA Agent Michael Dorsett that the appellant was involved in selling cocaine in the Atlanta area. Agent Dorsett directed Barnes to contact appellant Timberlake, determine the type and quantity of drugs Timberlake was dealing in, and indicate to Timberlake that he knew someone with money and a desire to buy drugs. Pursuant to these instructions, Barnes, in an effort to purchase drugs, contacted appellant at least once a week prior to February 1975. These efforts proved unsuccessful. Defense witness, Margaret L. Patterson, testified that she attended a meeting between Barnes and appellant in January 1975, where drugs and money were discussed, but appellant refused to participate in such dealings.

In February 1975, arrangements were made, during an unmonitored telephone conversation allegedly with the appellant, for Barnes to purchase cocaine from one Ronnie Wolfe.[3] Ronnie Wolfe sold Barnes, accompanied by Georgia Bureau of Investigation Special Agent Findley, one ounce of cocaine. In March 1975, Barnes and Agent Findley met with appellant accompanied at the time by Wolfe, and purchased cocaine from Timberlake. The final sale occurred on March 7, 1975, when Barnes and Agent Findley purchased cocaine from William Turnkey.[4] Trial testimony indicated that the appellant participated in arranging this sale. These three sales provided the factual basis for all four counts of the indictment.

Appellant was arrested on May 1, 1975, pursuant to a complaint. A federal grand jury indicted him on July 24, 1975.

1. The grand jury indictment also named Ronnie Wolfe and William Turnkey under the conspiracy charge. Count II charged Ronnie Wolfe, aided and abetted by Edward Lee Timberlake, with distribution of cocaine. Count IV charged William Turnkey, aided and abetted by Edward Lee Timberlake, with distribution of cocaine. Wolfe and Turnkey were also charged with committing overt acts in furtherance of the conspiracy. Appellant, however, was tried alone.

2. Appellant's first argument—that the court should have dismissed the indictment because the grand jury which returned it was not selected in compliance with the Jury Selection and Service Act of 1968, Title 28, U.S.C. §§ 1861–1866 (1970)—has recently been decided against him. *United States v. Davis*, 546 F.2d 583 (5th Cir. 1977).

The second ground of error asserted was the trial court's refusal to order production of the government informant, or alternatively, the court's failure to require the government to prove inability to produce and that it took no steps to assist the informant in becoming unavailable.

3. See note 1, *supra*.

4. See note 1 *supra*.

## II. ENTRAPMENT DEFENSE

In this appeal, appellant urges that the district judge erred in failing to charge the jury on entrapment at the close of the case. We agree.

Defense counsel, in his opening statement to the jury, asserted that appellant's defense was entrapment. He told the jury that Timberlake admitted selling cocaine.[5] Following these opening statements, the district judge gave the jury "preliminary instructions" with respect to the defense of entrapment, stating:

"Where the defense of entrapment is raised, the raising of that defense, admits the commission of the crime; that is, in this case, it would be admitted that the conspiracy and the sale of the narcotics involved. The defendant contends, however, that he was entrapped into committing those crimes." (Transcript at 30),

and further:

"Therefore, as you can see, the posture of the case now is that the defendant has admitted to you the sale and the conspiracy as alleged in the indictment, and you will focus your inquiry and examine the evidence presented to you to determine whether or not the defendant was entrapped into committing the crime." (Transcript at 31).

The trial judge followed this with a rather detailed explanation of entrapment. Defense counsel took exception to the district court's initial entrapment charge because the court instructed that appellant admitted a conspiracy, counsel maintaining that appellant's admission was to a sale, not to the conspiracy charge. Counsel further excepted to this initial charge as being incomplete. In response, the judge cautioned the jury that this was merely a preliminary discussion and not the complete law on the subject, which would be given to them at the close of the evidence as a part of his instructions. But the district court refused to charge the jury on the entrapment defense as a part of his final instructions. Defense counsel again took exception.[6]

 "Entrapment occurs only when criminal conduct is the product of the creative activity of government officials". *United States v. Groessel*, 440 F.2d 602, 605 (5th Cir. 1971), cert. denied, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713. See also, *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). This theory of defense to a criminal prosecution rests on the belief that "no one should be convicted of a crime if he was either an innocent seduced by a government agent or one whose resistance was overcome". *Pierce v. United States*, 414 F.2d 163, 165 (5th Cir. 1969), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425. This does not mean, however, that the prosecution is defeated merely because government agents provide the opportunities or the means to commit an offense. *Id.* See also, *Sorrells v. United States, supra; United States v. Groessel, supra.* Indeed, it is the nature of certain crimes[7] to be undetectable absent the use of government agents or informers. In these cases, it is often necessary for the government to ferret out evidence of guilt by approaching a suspect to offer him the opportunity to commit the crime. *Pierce v. United States, supra.*

---

**5.** Defense counsel's remarks included the following: "Ladies and gentlemen, the defense in our case is entrapment, and it is a very aseteric [sic, probably court-reporterese for esoteric] defense. His honor is going to instruct you on it. I want you to listen carefully to the law, because it is complex. We are not saying that Mr. Timberlake did not distribute some cocaine. We are acknowledging that. We are saying that he did". (Transcript at 3).

**6.** Defense counsel was refused four requested charges, three dealing with entrapment. He excepted. (Tr. Vol. IV, p. 434) The exception went directly to the court's failure to charge on entrapment. The trial court had a clear opportunity to correct his instructions, but failed to do so. The point was amply preserved for appellate review.

**7.** This is especially true of clandestine criminal activities such as drug trafficking, gambling, prostitution, and distribution of counterfeit money.

Yet, an individual can legitimately defend his actions that would otherwise amount to criminal conduct if he can show he was entrapped. The initial burden is on the defendant to go forward with some evidence, more than a scintilla, that government agents induced him to commit the offense. See *United States v. Groessel, supra.* The government can meet the claim of entrapment by demonstrating that the defendant was predisposed to commit the offenses, and thus the inducement did not corrupt an innocent or unwilling person. *Pierce v. United States, supra.*

■ Once there is some evidence that the government induced the defendant to commit the crime, the question of entrapment becomes a factual one for the jury to decide. *Id.* See also, *United States v. Kirk,* 528 F.2d 1057 (5th Cir. 1976). In that situation the defendant is entitled to have his defensive theory of the case put before the jury with appropriate instructions from the trial judge. See *United States v. Workopich,* 479 F.2d 1142 (5th Civ. 1973); *United States v. Groessel, supra.* "It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence". *Perez v. United States,* 297 F.2d 12, 15–16 (5th Cir. 1961) (emphasis added). See further, *United States v. Young,* 464 F.2d 160 (5th Cir. 1972).

■ In the case at bar, there was evidence showing that (1) Barnes had a motive to arrange a cocaine sale;[8] (2) government agents instructed him to contact appellant regarding illegal drugs; and

(3) numerous pre-buy contacts by Barnes with appellant failed to result in a sale of narcotics by appellant.[9] Moreover, the defense produced a witness, Ms. Patterson, who had been present at a meeting between Barnes and appellant in January 1975. She testified that appellant directly rejected Barnes' attempt to draw him into a discussion about procuring cocaine.[10]

A trial judge commits reversible error when he fails to instruct the jury on a theory of defense for which there is any foundation in the evidence. *United States v. Taglione,* 546 F.2d 194, 198 (5th Cir. 1977); *Strauss v. United States,* 376 F.2d 416 (5th Cir. 1967). The record here contained at the least minimally sufficient evidence to raise the factual issue of official inducement. The jury should have been given the opportunity to believe appellant's defense, "even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility." *United States v. Young,* 464 F.2d at 164, quoting *Tatum v. United States,* 88 U.S.App.D.C. 386, 190 F.2d 612, 617 (1950). See also, *United States v. Garcia,* 546 F.2d 613, 615 (5th Cir. 1977).

## III. CONCLUSION

We determine then that the trial judge committed reversible error in failing to instruct on entrapment. This error was compounded when he gave a preliminary entrapment charge at the commencement of the trial, and thereafter never discussed it further. Originally he had erroneously told the jurors that appellant Timberlake admitted to the conspiracy. The failure to instruct fully on entrapment and to clarify

8. Under the arrangement worked out between Barnes and the government, the government agreed not to prosecute Barnes on his cocaine charge if he would provide the DEA with information on narcotics trafficking and cocaine distribution. The complaint against him was later dismissed.

9. The fact that the government was reluctant to facilitate appellant's search for the informer, Bob Barnes, also bore on the presence of entrapment.

10. The government argues that these earlier events are irrelevant with respect to appellant's admitted sale of cocaine in March 1975. We think not. The probabilities were that each contact was not a totally independent act. Consistently, they could each be a part of a course of persuasive conduct by the government, finally culminating in a sale. See *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

the questions of what was admitted was harmful and grievous error.[11]

REVERSED and REMANDED for further proceedings.

---

**11.** We have recently held that after defendant had met his burden of fairly raising the issue of entrapment, the trial court committed plain error when it omitted giving the jury a general instruction on entrapment. *United States v. Benavidez*, 558 F.2d 308 (5th Cir. 1977) [decided August 29, 1977].

At a new trial of course the United States will be entitled to counter the appellant's entrapment defense with evidence of his predisposition to commit the offense charged.